UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WILLIAM R. VERNOR | CIVIL ACTION |
| VERSUS | NO. 12-2868 |
| STONEBRIDGE LIFE INSURANCE COMPANY | SECTION "L" (4) |

### ORDER & REASONS

Before the Court is Defendant Stonebridge Life Insurance Company's ("Stonebridge") motion for summary judgment. (Rec. Doc. 12). The Court has reviewed the briefs and the applicable law, and it now issues this ruling.

**I.     UNCONTESTED FACTS**

This matter arises out of a dispute over the scope of coverage in an insurance policy. On September 17, 2007, Plaintiff William Vernor executed an application for a $150,000 accidental death policy from Stonebridge, with whom he had an existing relationship. (Rec. Doc. 12-2 at 24-25). The application stated, "Yes, I want $150,000 of this Accidental Death coverage. . . . I certify that I have read this application . . . ." (*Id.* at 24).

After receiving the application, Stonebridge issued the accidental death policy,[1] number 03GH-FH1H, to Mr. Vernor on October 21, 2007. (*Id.* at 15-38). The first page of the policy states:

> ACCIDENTAL DEATH INSURANCE POLICY[.]
> . . . .
> This Policy pays benefits for death due to an accident. . . .
> . . . .

---

[1] According to his wife, Mr. Vernor is no longer in possession of the policy, which he discarded "after he wasn't paid." (Rec. Doc. 12-4 at 7). Stonebridge has provided a "true and correct copy." (Rec. Doc. 12-2 at 2).

>     YOUR RIGHT TO EXAMINE THE POLICY FOR 30
> DAYS: You may return this Policy and cancel your coverage
> . . . for any reason within 30 days . . . of the date you receive the
> Policy. Any premium payment is returned. The Policy is treated as
> if it never existed. . . .
>         . . . .
>     THIS IS A LIMITED POLICY – PLEASE READ
> CAREFULLY[.]
>         . . . .
>     BENEFITS FOR ACCIDENTAL DEATH[.]
>         . . . .
>     THIS IS A LEGAL CONTRACT – READ YOUR
> POLICY CAREFULLY[.]

(*Id.* at 15). On the following page, a "POLICY SCHEDULE" includes the name of the insured, the date the policy became effective, the policy number, the premiums, and the plan specifications. (*Id.* at 16). The plan specifications are listed as "Accidental Death Benefit: $150,000." (*Id.*). Several pages later, a part entitled "WHAT IS COVERED" states:

>     We pay a benefit if an insured dies as the result of an
> injury . . . . The Accidental Death Benefit is shown on your Policy
> Schedule. Death must occur within 90 days . . . of the accident
> causing the injury.

(*Id.* at 18). Several pages later, the policy also notes:

>     ENTIRE CONTRACT: This Policy, and any attached
> papers are the entire contract. No change in the Policy is effective
> until approved by one of our officers. This approval must be noted
> on or attached to the Policy. . . .

(*Id.* at 22). Mr. Vernor has stated that he received and read the policy. (Rec. Doc. 12-3 at 9-10).

After the policy became effective, Stonebridge sent billing statements to Mr. Vernor, which he paid as they came due. A number of the statements listed "AD&D" as the type of plan. (Rec. Doc. 13-3 at 1-13). The designation was changed to "Accid. Death" in December, 2008.

2

(*Id.* at 14). Mr. Vernor noticed this change, yet he did not contact Stonebridge to about it[2] and continued to make his monthly payments. (Rec. Doc. 12-3 at 11).

On April 10, 2009, Mr. Vernor was in a motorcycle accident, which resulted in the amputation of his left leg above the knee. The policy was in effect at the time. About a year after the accident, Mr. Vernor's wife submitted a claim for dismemberment benefits with supporting documentation. On May 3, 2010, Stonebridge denied Mr. Vernor's claim, explaining that "[t]his Policy does not provide benefits for Accidental Dismemberment." (Rec. Doc. 12-2 at 53). It indicated that the designation "AD&D" on the billing statements "is a 'category' of the type of coverage (i.e., life, health, etc.) and [was] not meant to grant benefits outside of the Policy provisions." (*Id.*). In response to telephone calls from Mr. Vernor's wife, Stonebridge sent another letter to Mr. Vernor on May 10, 2010, which reiterated that the designation referred to the type of policy, not the policy itself. (*Id.* at 27-28).

## II. PRESENT MOTION

Stonebridge now moves for summary judgment. (Rec. Doc. 12). It argues that Mr. Vernor's policy provided coverage for accidental death, not accidental death and dismemberment, and thus the loss of his leg is not covered. It further asserts that the fact that certain billing statements listed "AD&D" as the coverage type could not have altered the terms of the policy.

Mr. Vernor offers several responses. (Rec. Doc. 13). First, he argues that the ambiguity and confusion caused by the designation "AD&D" on early billing statements and the language of the application caused him to believe that he had accidental death and dismemberment coverage. Second, he argues that because Stonebridge has several forms—form number SL-21*2*-

---

[2] It is not clear whether his wife contacted the company on his behalf. (Rec. Doc. 12-3 at 11).

1005 and form number SL-213-1005—for policy number 03GH-FH1H, it is possible that there is yet another form that includes language about dismemberment coverage.

Stonebridge replies that any ambiguity and confusion caused by the designation on the billing statement is immaterial because the policy itself is what defines the extent of his coverage. (Rec. Doc. 20). It also asserts that the language of the application and policy were both clear and unambiguous. With regard to the possibility of there being yet another form for policy number 03GH-FH1H, Stonebridge acknowledges that it accidentally produced form SL-212-1005 during discovery, but argues that the existence of other forms for policy number 03GH-FH1H is immaterial because form SL-213-1005 was the only form Mr. Vernor actually received. (It notes that even if it were material, both forms provide coverage for accidental death, not accidental death and dismemberment.)

### III.   LAW & ANALYSIS

#### A.   Standard

Summary judgment is appropriate if the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See Prejean v. Foster,* 227 F.3d 504, 508 (5th Cir. 2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986). Furthermore, "[t]he non-movant cannot avoid summary judgment ... by merely making 'conclusory allegations' or 'unsubstantiated assertions.' " *Calbillo v. Cavender Oldsmobile, Inc.,* 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)). In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the nonmovant. *Id.* at 255.

    **B.**    **Analysis**

The issue here is whether Mr. Vernor's insurance policy with Stonebridge included coverage for accidental dismemberment. Because the parties are diverse, the dispute is governed by Louisiana's substantive law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under Louisiana law, "interpretation of an insurance policy usually involves a legal question . . . ." *Bonin v. Westport Ins. Corp.*, 930 So. 2d 906, 910–11 (La. 2006). As a contract, an insurance policy "should be construed under the general rules of interpretation of contracts . . . ." *Id.* "Words . . . used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Id.* "When the words of a [policy] are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE art. 2046.

Here, the policy itself represents the "entire contract." (Rec. Doc. 12-2 at 22). Therefore, it is necessary to determine whether the plain, ordinary, and generally prevailing meaning of the policy's words limit Mr. Vernor's coverage to accidental death. Having closely considered the language of the policy, it is apparent that the parties intended for coverage to be limited to accidental death; it is simply not possible to "read in" coverage for accidental dismemberment. For example, the policy itself is entitled "ACCIDENTAL DEATH INSURANCE POLICY."

5

(Rec. Doc. 12-2 at 15). Further, the section labeled "WHAT IS COVERED" plainly indicates that the policy "pay[s] a benefit if an insured *dies* as the result of an injury . . ." and that for it to pay "[d]eath must occur within 90 days . . . of the accident causing the injury." (*Id.* at 18 (emphasis added)). Additionally, the term "dismemberment" is used but once, and then only in reference to any other policies the insured may have. (*Id.* at 22). Thus, the plain, ordinary, and generally prevailing meaning of the policy's words limit coverage to accidental death.

Because the words of the policy clearly and explicitly limit Mr. Vernor's coverage to accidental death, "no further interpretation may be made in search of the parties' intent." LA. CIV. CODE art. 2046. Therefore, the designation "AD&D" on certain billing statements is extrinsic and may not be considered in determining the parties' intent.[3] Likewise, Stonebridge's production of the incorrect form for the accidental death policy during discovery in this case is irrelevant. Any confusion caused by either the designation on the billing statements or by the existence of an alternate form for the accidental death policy occurred after, apart from, and outside of the policy.

"It is well settled that it is the insured's obligation to read the policy when received, since the insured is deemed to know the policy contents." *Seruntine v. State Farm Fire & Cas. Co.*, 42 So.3d 968, 968 (La. 2010). Mr. Vernor states that he fulfilled this obligation. Thus, he had ample opportunity to cancel the accidental death policy he had received and replace it with an accidental death and dismemberment policy if he had wanted to do so.

---

[3] Nor could the billing statements be construed as amending the contract. The policy states that "[n]o change in the Policy is effective until approved by one of [Stonebridge's] officers" and that such "approval must be noted on or attached to the Policy." (Rec. Doc. 12-2 at 22). The billing statements do not meet these requirements. However, even if the statements could be considered to have amended the policy to include dismemberment coverage, it seems that Stonebridge's decision to change the designation "AD&D" to "Accid. Death" would have effectively amended dismemberment coverage out again.

## IV. CONCLUSION

For the aforementioned reasons, **IT IS ORDERED** that Stonebridge's motion for summary judgment (Rec. Doc. 12) is **GRANTED**. **IT IS FURTHER ORDERED** that Mr. Vernor's motion to continue (Rec. Doc. 36) is **DENIED** as moot.

New Orleans, Louisiana, this 18th day of November, 2013.

_____
UNITED STATES DISTRICT JUDGE